UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:07-cr-083 RCJ-RJJ |
| vs. | REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| RAMON GONZALEZ, | (Defendant's Motion to Suppress #13) |
| Defendant. | |

This matter was submitted to the undersigned Magistrate Judge on Defendant Ramon Gonzalez's Motion to Suppress (#13). The Court has considered the Defendant's Motion to Suppress (#18), the Government's Response (#16), and the Defendant's Reply (#17), in addition to the testimony and evidence presented at the evidentiary hearing. The Defendant requested an opportunity to raise additional issues through a supplemental hearing after the evidentiary hearing. The Court granted the request, and now decides the motion.

**BACKGROUND**

The defendant, Ramon Gonzalez, was indicted by the Federal Grand Jury and charged with violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. The indictment was the result of a firearm found during a traffic stop on June 6, 2005. The charge is based on a Ruger Mark I semi-automatic .22 caliber handgun, serial number 10-39607, found in defendant's gym bag located in the trunk of the vehicle Gonzalez was driving.

The testimony at the hearing, established that on June 6, 2005, Officer J. Winn, began running random license plate numbers to determine whether vehicles being driven had current

1  registrations. At approximately 4:00 p.m., Winn ran a 2005 Dodge Neon, with Nevada license plate
2  number "400SKJ". The computer search showed no registration for the vehicle. Winn ran the
3  search several more times, to assure he was not making a mistake, but the results came back the same
4  each time, the Nevada license plate number did not match the vehicle. At this point, Winn
5  determined that he needed to stop the vehicle to inquire as to why the license plate number did not
6  match the vehicle. Winn activated his overhead lights and notified dispatch of the stop. The vehicle
7  pulled over and Winn approached the driver's side of the vehicle and asked the driver, Gonzalez,
8  for his license, registration, and insurance. Winn asked the defendant where he was from and who
9  owned the vehicle. Gonzalez responded that he did not know who the car belonged to because it was
10 a rental and that a friend, whose name he could not remember loaned him the car. Gonzalez
11 provided no documentation to show that he was authorized to drive the vehicle. During this time
12 Gonzalez acted extremely nervous and would not look Winn in the eyes. Due to the defendant's
13 nervousness, Winn asked if he had ever been arrested. Gonzalez answered in the affirmative stating
14 that he had served time for armed robbery and drug offenses. Winn wrote down the vehicle
15 identification number to run a search on the vehicle. Winn left the defendant in the Neon and
16 returned to his patrol car to run a VIN search. The VIN search produced no matches with the license
17 plate number. Winn believed the vehicle might be stolen. At this time, Winn called Officer Michael
18 Fisher for back-up. While Winn waited for Fisher to arrive, Winn ran an outstanding warrant
19 search[1] on Gonzalez. Fisher arrived at around 4:15 p.m. to 4:20 p.m. Winn explained the situation
20 to Fisher.

21        Fisher then ran the same searches on the vehicle which showed that the license plate did not
22 match the vehicle. Fisher and Winn approached the vehicle and ask Gonzalez to step out of the
23 vehicle. He stepped out of the vehicle and Fisher again asked who was the owner of the vehicle, or
24 the name of his friend that had loaned him the vehicle. Gonzalez could not provide this information.
25 Winn observed that the defendant continued acting nervously by constantly looking at the ground
26 and not at the officers. Due to his nervousness, Winn and Fisher concluded that Gonzalez was trying

27
28    [1] This search is conducted by calling dispatch and having them run a national warrant database search. Results for this type of search may take upwards of five to ten minutes.

- 2 -

to hide something. At this point, Fisher asked for consent to search the vehicle for narcotics. Gonzalez was told he could refuse consent, but he gave verbal consent to allow Winn and Fisher to search the vehicle. Fisher then filled out a Las Vegas Metropolitan Police Department Consent to Search Card and read it to the defendant. It reads:

> I, Ramon Gonzalez- Olivera, having been informed of my right not to have a search made of the premises/property listed hereafter without a search warrant issued by a court of jurisdiction, and of my right to refuse to consent, to a search for items directly or indirectly related to the investigation of Traffic Stop, do hereby voluntarily consent to a search of . . . Vehicle 400-SKJ-NV; 05 Dodge Neon & Trunk, for the following: Narcotics.

Government Exhibit 2. Fisher then warned Gonzalez that he did not need to give consent or sign the card, that it was voluntary to do so. The defendant was given time to review the Consent to Search Card. After reviewing the Consent to Search Card, Gonzalez stated that he understood his rights and then signed the card. Gonzalez was asked to face the front of the patrol car, with his hands placed on the hood, while Winn began the search. While Winn searched the trunk of the vehicle, he noticed a gym bag. Winn opened the gym bag and found a loaded Ruger Mark I semi-automatic .22 caliber handgun, serial number 10-39607, wrapped in a pair of sweatpants. Winn advised Fisher of the firearm and Fisher placed Gonzalez under arrest.

Gonzalez now seeks to suppress the firearm found during the police search. To determine whether to grant the defendant's Motion to Suppress (# 13), the Court must first determine whether Winn's actions constituted an unreasonable seizure within the Fourth Amendment; second, whether the scope of the traffic stop was constitutional; third, whether Defendant gave valid consent to the search; and fourth, whether Defendant was coerced into believing that he had no authority to withdraw his consent during the search.

### DISCUSSION

The Fourth Amendment provides, in pertinent part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Supreme Court has stated that "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable

1  authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1968).  This right protects people, and wherever a

2  person may harbor a reasonable expectation of privacy, from all unreasonable searches and seizures.

3  Terry, 392 U.S. at 9.  If a search or seizure is conducted without probable cause or without a valid

4  search warrant, an individual's Fourth Amendment rights are violated . Katz v. United States, 389

5  U.S. 347, 357 (1967).

**Standing**

7        To have standing to invoke Fourth Amendment protections,  a person must demonstrate a

8  legitimate expectation of privacy by showing: (1) a subjective expectation of privacy; and (2)  an

9  objectively reasonable expectation of privacy.  Smith v. Maryland, 442 U.S. 735, 740 (1979).  The

10  defendant bears the burden of demonstrating standing by showing that a legitimate expectation of

11  privacy in the area searched existed.  Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); United States

12  v. Dorias, 241 F.3d 1124, 1130 (9th Cir. 2001). The Ninth Circuit holds that when standing issues

13  are raised pertaining to rental cars, "[a]n unauthorized driver may have standing to challenge a search

14  if he or she has received permission to use the car."  United States v. Thomas, 447 F.3d 1191, 1199

15  (9th Cir. 2006).  Thus, "a defendant who lacks an ownership interest may still have standing to

16  challenge a search, upon a showing of 'joint control' or 'common authority' over the property

17  searched."  Thomas, 447 F.3d at 1198.  It then becomes the burden of the defendant to show by a

18  preponderance of the evidence that a legitimate expectation of privacy exists. U.S. v. Caymen, 404

19  F.3d 1196, 1199 (9th Cir. 2004).

20        In the present matter, Gonzalez does not have standing to challenge the search of the rental

21  car. He incorrectly argues that the Government bears the burden to raise standing.  The defendant

22  always bears the burden of demonstrating standing, or a reasonable expectation of privacy in the

23  property searched. United States v. Singleton, 987 F.2d 1444, 1447 (9th Cir. 1993).   It is well

24  established, by the Ninth Circuit, that in order for a person to challenge the search of a rental car,

25  evidence of permission to use the car must be shown.  Thomas, 447 F.3d at 1199.  Gonzalez failed

26  to provide the Court with any evidence showing possession or authority to drive the rental car;

27  therefore, he has no standing to challenge the search of the rental car.  Nevertheless, the police did

28  not just search the car, they searched a bag, owned by defendant, which was found in the trunk of

the car. Gonzalez's supplemental brief raised the issue of standing, as applied to the gym bag.

This Court must now determine whether the defendant has standing to challenge the search of his bag, despite the lack of standing to challenge the search of the rental car. The Supreme Court in California v. Acevedo, analyzed whether the automobile exception to a warrantless search applied to the search of a closed container located inside of a vehicle. 500 U.S. 565, 579-80 (1991). Although Acevedo was decided using the automobile exception doctrine, the Supreme Court noted that if officers have probable cause to think that a container contains contraband, then a warrantless search will be allowed. 500 U.S. at 580. However, if probable cause is absent, then the Government cannot search the container without obtaining a search warrant because a reasonable expectation of privacy exists in the container. Acevedo, 500 U.S. at 580; see also United States v. Buchner, 7 F.3d 1149, 1154 (5th Cir. 1993) (stating that "[t]he owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase."). Here, there was no dispute of ownership of the gym bag, Gonzalez acknowledged that the gym bag was his. Although the vehicle did not belong to him, the gym bad did, and any reasonable person would have a legitimate expectation of privacy in the bag. Therefore, the Court concludes that the defendant has standing to challenge the search of his gym bag. Before determining whether the search of the gym bag was constitutional, the Court must determine whether the officers' actions leading up to the search were constitutional.

### I. Traffic Stop

The Ninth Circuit holds that "[a]n automobile stop by police is a seizure within the meaning of the Fourth Amendment . . . [and s]uch a stop is subject to the constitutional requirement that it not be unreasonable." United States v. Garcia, 205 F.3d 1182, 1186 (9th Cir. 2000). However, "if the officer had probable cause to believe that a traffic violation had occurred, the seizure is [considered] reasonable." Garcia, 205 F.3d at 1186-87. Moreover, an officer may stop a vehicle, based on the totality of the circumstances, if the officer has a reasonable or well-founded suspicion. United States v. Olafson, 213 F.3d 435, 439 (9th Cir. 2000). "Reasonable suspicion exists when an officer is aware of specific, articulable facts, which, together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is

about to commit a crime." Olafson, 213 F.3d at 439. The totality of the circumstances is to be taken into account as well as the facts interpreted in light of a trained officer's experience. United States v. Sokolow, 490 U.S. 1, 8 (1989). In the Ninth Circuit, a traffic violation alone is sufficient to establish reasonable suspicion. United States v. Choudhry, 461 F.3d 1097, 1100-01(9th Cir. 2006).

In the present matter, probable cause to believe a traffic violation had occurred justified the stop of the vehicle. At the hearing it was shown that the license plate on the vehicle did not match the registration. Further, Winn testified that based on his training and prior experience, when a license plate does not match with the registration, the vehicle may be stolen. Based on these facts, Winn had probable cause to believe that the vehicle Gonzalez was driving might be stolen. Stopping the vehicle to investigate was reasonable.

## II. Scope of the Traffic Stop

The Supreme Court has held that, during an investigatory detention, police contact must be reasonably related in scope to the circumstances which initially justified the detention. Terry, 392 U.S. at 20. The Ninth Circuit holds that "[t]he length and scope of detention must be justified by the circumstances authorizing its initiation." Pierce v. Multnomah County, 76 F.3d 1032, 1038 (9th Cir. 1996). Once "an officer has obtained sufficient information to issue a citation, a continued detention without probable cause to arrest for a crime is unreasonable." Pierce, 76 F.3d at 1038. However, an "officer's subjective intentions do not make continued detention illegal, so long as the detention is justified by the circumstances viewed objectively." Ohio v. Robinette, 519 U.S. 33 (1996).

In the case at hand, Gonzalez argues that the officers detained him longer than necessary to effectuate the traffic stop for an unregistered vehicle. The defendant agrees with the Government that the Supreme Court holds that an officer lacking reasonable suspicion may ask questions unrelated to the traffic stop to broaden the scope of the stop. United States v. Mendez, 476 F.3d 1077, 1080-81 (9th Cir. 2007). The testimony at the hearing established that Winn stopped Gonzalez to investigate whether the vehicle was registered or stolen. Winn asked Gonzalez for the documentation routinely requested in a traffic stop: driver's license; registration; and proof of insurance. Gonzalez only provided Winn with a driver's license and could not provide proof of

ownership of the vehicle. Due to his extreme nervousness, Gonzalez was asked if he had ever been arrested. He answered in the affirmative and added that he had served time for armed robbery and other offenses. It was the defendant's nervous actions and lack of vehicle documentation that caused Winn to investigate the situation further. Winn called for backup, and while waiting for backup, ran several more searches on the vehicle, including a search for any outstanding warrants on Gonzalez. Under the circumstances presented to Winn, these searches were reasonable to effectuate the purpose of the traffic stop. Although it took backup about fifteen to twenty minutes to arrive on the scene, this amount of time is reasonable considering rush hour traffic at that time of day Gonzalez was stopped.

When backup arrived, the determination of whether the vehicle was stolen remained unresolved. Fisher ran additional searches on the vehicle but the license plate and registration came back different. To further the investigation, both Winn and Fisher approached the defendant and began questioning him. Gonzalez stated that he thought the car was a rental but he could not provide the name of the person who rented it, or the person who loaned it to him. This coupled with the defendant's extreme nervousness, have a sense to both officers that Gonzalez was trying to hide something, or that a crime was afoot. This caused Winn and Fisher to ask Gonzales if they could search the vehicle. Even absent reasonable suspicion, under <u>Mendez</u>, the officers were allowed to ask for consent to search the vehicle. 476 F.3d at 1080-81.

Based on the totality of the circumstances presented to both officers, the Defendant's detention was not unnecessarily prolonged without adequate justification. Winn testified that based on his training and prior experience, he knew that crimes were committed using stolen vehicles, and until it could be proved that the car was not stolen, Winn was justified in believing that the vehicle was stolen. The Court finds that the traffic stop was reasonable and that the scope of the detention was tailored to its initial justification. The fifteen to twenty minutes that the Defendant had to wait for police backup was not unreasonable. Gonzalez was not removed from the car or placed in handcuffs, but was allowed to remain in the vehicle while the investigation was ongoing.

### III. Consent to Search

According to the Fourth Amendment, the Government may not search a person unless a valid

1  search warrant is executed; however, certain exceptions exist for this rule. Katz, 389 U.S. at 357.
2  Warrantless searches are permissible if it falls within one of the "specifically established and
3  well-delineated exceptions." Katz, 389 U.S. at 357. One of these "specifically established and
4  well-delineated exceptions" is a search conducted after consent is given. Florida v. Jimeno, 500 U.S.
5  248, 250-51 (1991).

6        "It is well settled that a search conducted pursuant to a valid consent is constitutionally
7  permissible." United States v. Soriano, 361 F.3d 494, 501 (9th Cir. 2004). The Supreme Court has
8  "long approved consensual searches because it is no doubt reasonable for the police to conduct a
9  search once they have been permitted to do so." Jimeno, 500 U.S. at 251. The government bears
10  the burden of showing that consent to a warrantless search was voluntary. Jimeno, 500 U.S. at 251;
11  see also Soriano, 361 F.3d at 501. The validity of a person's consent is a question of fact, and its
12  resolution depends upon the totality of the circumstances. United States v. Cormier, 220 F.3d 1103,
13  1112 (9th Cir. 2000). The Ninth Circuit considers several factors to determine whether a person
14  freely consents to a search: "(1) whether the defendant was in custody; (2) whether the arresting
15  officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant
16  was told he had a right not to consent; and (5) whether the defendant was told that a search warrant
17  could be obtained." Cormier, 220 F.3d at 1112. However, there is no single controlling factor.
18  United States v. Kaplan, 895 F.2d 618, 622 (9th Cir. 1990). These factors are merely guideposts,
19  not a mechanized formula to resolve the voluntariness inquiry. Soriano, 361 F.3d at 502. No one
20  factor is determinative because just as "every encounter has its own facts and its own dynamics . .
21  . so does every consent." United States v. Morning, 64 F.3d 531, 533 (9th Cir. 1995).

22        Here, based on the totality of the circumstances and after considering the applicable factors,
23  the Court concludes that Gonzalez voluntarily consented to the search. First, the defendant was not
24  in custody when consent was given to search the vehicle he was driving. Winn and Fisher asked
25  him to step out of the vehicle. No restraints were placed on him. Second, neither Winn nor Fisher
26  had their guns drawn when Gonzalez was asked for consent. Third, Miranda warnings did not need
27  to be given because Gonzalez was not in custody. Soriano, 361 F.3d at 504. Fourth, Gonzalez was
28  told on two occasions that he had a right not to consent. The first instance was after Fisher asked

- 8 -

1  for verbal consent to search the car, and the second instance was before having Gonzalez sign the
2  consent to search card.  Finally, evidence was presented to show that neither officer told Gonzalez
3  that a search warrant could be obtained.

4  Based on the totality of the circumstances, Gonzalez freely consented to the search.  Because
5  he did not have standing to challenge the search of the vehicle, the consent would only apply to
6  property where he had a reasonable expectation of privacy.  This leads to the question of whether
7  the scope of Defendant's consent applied to the gym bag.  The Court finds that when Gonzalez
8  willfully gave consent to search for narcotics, he implicitly gave consent to search his gym bag.

**Scope of Consent**

It is a Fourth Amendment rights violation for a consensual search to exceed the scope of a suspect's given consent.  United States v. McWeeney, 454 F.3d 1030, 1034 (9th Cir. 2006).  The scope of a suspect's consent can be measured using the "objective reasonable" standard outlined in Jimeno: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  500 U.S. at 251.  If a suspect's consent "would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization."  Jimeno, 500 U.S. at 252.

In the case at hand, Gonzalez implicitly gave Winn and Fisher consent to search the gym bag.  The "objective reasonable" test demands analysis by what a typical reasonable person would have understood in the situation.  Jimeno, 500 U.S. at 251.  So the pertinent inquiry is whether the defendant would have understood the exchange with Winn and Fisher as indicating that his authorization extended to a search of the gym bag located in the trunk. Fisher informed the defendant that the officers planned to search the entire vehicle for narcotics, including the trunk.  It is reasonable, and common knowledge, that drugs are typically transported in bags or secret compartments inside vehicles.  It is also reasonable for a typical person, when confronted by police and asked to search for drugs, to think that the search would be conducted thoroughly, including searching an unlocked gym bag which may possibly hold drugs.

Fisher asked for verbal consent to search the entire vehicle for narcotics and Gonzalez gave consent.  Fisher, being thorough, pulled out a LVMPD Consent to Search Card, filled it out, and

1  presented it to the defendant.  Gonzalez was able to hold and read the card, analyze it, and decide
2  whether to sign it. He demonstrated a command of the English language at the suppression hearing.
3  Gonzalez was given ample time to review and understand the card.    The Consent to Search Card
4  expressly stated: "to a search for items directly or indirectly related to the investigation" inside of
5  the "trunk."  Government Exhibit 2.  At this point, the defendant knew: (1) that he was transporting
6  a gun inside his gym bag located in the trunk; and (2)  that the officer's were looking for drugs or
7  anything indirectly related to drugs inside the trunk of the vehicle.  He had the opportunity to revoke
8  his consent or ask the officers to explain what "indirectly related to the investigation" meant;
9  however, neither occurred.  At this point, any reasonable person hiding something illegal in the trunk
10 would know that the possibility of officers discovering the illegal thing in the trunk was likely to
11 occur. So when Gonzalez gave consent to search the trunk, he implicitly acknowledged that in order
12 to search for narcotics, the officers would have to look inside his gym bag.

13        "The community has a real interest in encouraging consent, for the resulting search may yield
14 necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly
15 innocent person is not wrongly charged with a criminal offense." Jimeno, 500 U.S. at 252.  The
16 Court finds that the defendant's consent to search extended to his gym bag located in the trunk of
17 the vehicle.

### IV. Authority to Withdraw Consent

19        Once a person has given consent to search their personal property, the person continues to
20 have a constitutional right to modify or withdraw the general consent at anytime.   McWeeney, 454
21 F.3d at 1035. "Just as the Fourth Amendment would be valueless without the use of the exclusionary
22 rule, so too would the right to withdraw consent be valueless if law enforcement officers" coerce
23 citizens into believing that they have no authority to withdraw the consent.  McWeeney, 454 F.3d
24 at 1035.  The Ninth Circuit holds that it is within the discretion of the court to determine whether
25 officers  "created a setting in which the reasonable person would believe that he or she had no
26 authority to limit or withdraw the consent.  McWeeney, 454 F.3d at 1035.  The question that must
27 be answered is "whether a reasonable person would feel free to decline the officers' requests or
28 otherwise terminate the encounter."  Bostick, 501 U.S. at 436.  The Ninth Circuit has provided the

court with factors to consider in order to determine whether the "officers' conduct is objectively recognizable as intimidation directed mostly (or exclusively) at coercing [Defendant] into believing that [he] had no right to withdraw or delimit [his] consent once it was given, and whether a reasonable person faced with the officers' conduct would have believed that no such right existed." McWeeney, 454 F.3d at 1037. The factors are:

> (1) the language used to instruct the suspect;
> (2) the physical surroundings of the search;
> (3) the extent to which there were legitimate reasons for the officers to preclude the suspect from observing the search;
> (4) the relationship between the means used to prevent observation of the search and the reasons justifying the prevention;
> (5) the existence of any changes in circumstances between when consent is obtained and when the officers prevent the suspect from observing the search; and
> (6) the degree of pressure applied to prevent the suspect either from observing the search or voicing his objection to its proceeding further.

McWeeney, 454 F.3d at 1037.

Officers Winn and Fisher did not create a setting where Gonzalez believed he had no authority to limit or withdraw his consent. First, there is no indication that Winn or Fisher used language that would indicate that the defendant could not withdraw his consent. On the contrary, Gonzalez was warned twice that he had the right to refuse consent. Further, at no time was he told that once consent was given, he could no longer withdraw his consent. The search was conducted out in the open on a busy road. There is no indication that the physical surroundings made Gonzalez think that he had no authority to withdraw his consent. Evidence was presented at the hearing showing that he was asked to face the front of the patrol car with his hands on the hood while the other officer conducted the search. It is LVMPD protocol to have every suspect face the patrol car during a vehicle search for officer safety. The Ninth Circuit in McWeeney stated that there is no constitutional right to observe a search, only a constitutional right to withdraw consent once it is given. McWeeney, 454 F.3d at 1037 n.2. Gonzalez continued to have the right to withdraw his consent by simply stating so. Although he was not allowed to observe the search, officer safety outweighed his right to observe the search.

No means was used to prevent Gonzalez from observing the search other than having him face the patrol car with his hands on the hood. Fisher did not have his gun drawn nor was the

defendant handcuffed or held down by Fisher. There was no change in the circumstances between when consent was obtained and when the officers conducted the search. Evidence was presented at the suppression hearing indicating that the officers and Gonzalez all remained calm during the investigation and search. The entire process was conducted in a calm manner. Nothing indicated that Gonzalez lost his authority to withdraw or limit his consent. Lastly, there was no pressure applied to prevent him from observing the search or voicing his objection to the search. The defendant knew that the officers were going to search inside his trunk. Even though he was asked to stand facing the patrol car with his hands on the hood for officer safety, Gonzalez was free to voice his objection. He failed to do so. Based on these factors, a reasonable person in the defendant's circumstance would not feel that the officers actions were intended to coerce him into believing that he could not withdraw or limit his consent once it was given.

Based on the totality of the circumstances, and considering the factors outlined in McWeeney, the Court finds that Officer Winn and Fisher did not create a setting in which a reasonable person would believe that he or she had no authority to limit or withdraw the consent.

**CONCLUSION**

The Court concludes that: (1) Officer Winn's actions did not constitute an unreasonable seizure within the Fourth Amendment; (2) the scope of the traffic stop was constitutional; (3) Gonzalez gave valid consent to allow the officers to search his bag; and (4) Gonzalez was not coerced into believing that he had no authority to withdraw or limit his consent. Defendant's Motion to Suppress (#13) should be denied.

**RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Defendant's Motion to Suppress (#13) be **DENIED**.

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court on or before March 3, 2008.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the

failure to file objections within the specified time. <u>Thomas v. Arn</u>, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991); <u>Britt v. Simi Valley United Sch. Dist.</u>, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 20th day of February, 2008.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge

- 13 -